IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| MAUI LAND & PINEAPPLE COMPANY, INC., | ) ) ) | CIV. NO. 08-00465 SOM/LEK |
| Plaintiff, | ) ) | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| vs. | ) ) | |
| COUNTY OF MAUI, LORI TSUHAKO, in her official capacity as the Director of the Department of Housing and Human Concerns for the County of Maui, and DOE GOVERNMENT OFFICIALS 1-10; and DOE GOVERNMENTAL UNITS 1-10, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

I.       INTRODUCTION.

        This dispute is over whether Maui Land & Pineapple Company, Inc. ("MLP"), must charge below-market rates for certain residential units it develops.  MLP moves for summary judgment seeking an order stating that MLP's planned residential development is exempt from a Maui ordinance requiring affordable housing.  In the alternative, MLP seeks an order stating that the ordinance, as applied, violates the Contracts Clause of the United States Constitution.  The court denies MLP's motion for summary judgment because MLP has not established as a matter of law that it is exempt from the 2006 ordinance, or that the ordinance as applied violates the Contracts Clause.

II.       BACKGROUND.

In 1989, the Maui County Council rezoned approximately 211 acres of land on Maui.  Ord. 1845 (1989), Ex. 2 att. to Pl.'s Concise Statement (Aug. 27, 2009).  The area is known as Lahaina Project District 1 ("LPD 1").  Maui County Code ("MCC") §§ 19.73.010-19.73.100 (1989).  The area was set aside for the development of hotel facilities, multi-family residences, and commercial services that would surround a central village core. MCC § 19.73.010(A).

Any applicant who wanted to develop in LPD 1 had to enter into an agreement with the County to "develop an affordable housing program for residents of West Maui, provided that development other than hotel development within the project district may proceed before the agreement has been executed." MCC § 19.73.100(A)(2).

MLP is the owner and master developer of "hotel and resort residential real estate on Maui."  Supp. Decl. of Ryan Churchill ¶ 3 (Nov. 2, 2009).  MLP owned and developed the Kapalua Resort on Maui, part of which is located in LPD 1.  Id. ¶ 4.

In 2004, the County and MLP entered into an agreement to develop an affordable housing program.  See Ex. 3 att. to Pl.'s Concise Statement.  This "Bilateral Agreement for Development and Coordination of an Affordable Housing Program"

2

states that MLP "shall provide affordable housing . . . in accordance with the affordable housing policy and requirements set forth in Chapter 2.94, Maui County Code." Id.  The Bilateral Agreement also describes chapter 2.94 as "implement[ing] an affordable housing construction program applicable to hotel developments." Id.

Chapter 2.94, enacted in 1991 and titled "Affordable Housing Policies for Hotel-Related Developments," was designed to create affordable housing in connection with hotel-related developments.  MCC § 2.94.010 (repealed in 2006). See Pl.'s Concise Statement ¶ 5.  This chapter was enacted to address, among other things, the shortage of affordable housing that numerous planned hotel developments were expected to cause.  MCC § 2.94.010.  "[A]partment-hotel, hotel and motel" developers were required to construct affordable housing units. Id. Specifically, an applicant was "required to construct affordable housing at a minimum of one affordable housing unit for every four apartment-hotel, hotel or motel rooms."  MCC § 2.94.030.

Neither the Bilateral Agreement, chapter 2.94, nor the 1989 rezoning ordinances explicitly referred to any requirement to provide affordable housing in connection with any development that was strictly residential.

MLP planned to create a "central village" or "central resort site" to replace some of the buildings and shops in the

3

resort area.  See Ex. 5 att. to Pl.'s Concise Statement (letter
dated April 30, 2009, noting that the Kapalua Central Resort
Project is in accordance with plans approved by the Maui Planning
Commission); see also Ex. 3 at 90 att. to Def.'s Concise
Statement (noting that the central resort project is intended to
replace Kapualua shops and maintenance buildings).  This central
resort would include residential and commercial components.  Id.
It is unclear from the record when MLP first developed plans for
the central resort project.

On December 5, 2006, chapter 2.96, titled "Residential
Workforce Housing Policy," went into effect.  This chapter, like
the earlier chapter 2.94, which was repealed in 2006, was
designed to address the affordable housing shortage.  MCC
§ 2.96.010 (noting that "there is a critical shortage of
affordable housing").  The provisions of chapter 2.96 are broader
than those in the repealed chapter 2.94, and apply to "[a]ny
development, including the subdivision of land and/or the
construction of single-family dwelling units, . . . or hotels . .
. whether constructed at one time or over several years."  MCC
§ 2.96.030(A).  This chapter requires a developer with a project
subject to this chapter to sign a residential workforce housing
agreement with the County.  MCC §§ 2.96.040(A)(1)-(A)(2).  Under
the residential workforce housing agreement, the developer must
rent or sell forty to fifty percent of the total number of

developed units to low-income individuals when offering fifty
percent or more of the units or new lots for sale.  MCC
§ 2.96.040(A).  The requirements do not apply to a development
that "is subject to an affordable housing requirement, evidenced
by an executed affordable housing agreement with the County,
currently in effect and approved prior to the effective date of
the chapter," or that "is subject to a change in zoning condition
that requires affordable or residential workforce housing, unless
the condition expressly allows for the application of the
affordable housing or residential workforce housing policy set
forth herein."  MCC §§ 2.96.030(B)(1), 2.96.030(B)(2).

On December 6, 2006, MLP sent a letter to the Maui
County Department of Housing and Human Concerns seeking
clarification that its development within LPD 1, including the
central resort project, was exempt from the requirements of
chapter 2.96.  See Ex. 8 att. to Pl.'s Concise Statement.  In the
letter, MLP asserted, "Since Lahaina Project District 1 is
subject to a change in zoning condition requiring affordable
housing and no other housing policy applies, the development is
exempt pursuant to Section 2.96.030B.2 of the Maui County Code."
Id.  MLP asked the Director of the County of Maui Department of
Housing and Human Concerns and the Mayor of the County of Maui to
"countersign this letter [to indicate] agreement with the above
analysis and our conclusion that the exemption applies."  Id.  On

5

December 12, 2006, Alice Lee, the Director of the Department of Housing and Human Concerns, and Alan Arakawa, the Mayor, signed the letter.  Id.

Thereafter, a new County administration took charge. On March 28, 2007, Vanessa Medeiros, the new Director of the Maui Department of Housing and Human Concerns, notified the Maui Department of Planning that the former Mayor and former Director of the Department of Housing and Human Concerns had agreed that MLP's central resort project was exempt from the requirements of chapter 2.96.  Ex. 9 att. to Pl.'s Concise Statement.  On April 11, 2007, Vanessa Medeiros notified the Department of Planning that, contrary to what the former administration had stated, MLP's central resort project was indeed subject to the new requirements.  Ex. 10 att. to Pl.'s Concise Statement.

On October 17, 2008, MLP filed suit in federal court, asserting various claims and contending that its central resort project was exempt from the requirements of chapter 2.96.  On August 27, 2009, MLP filed the present motion for summary judgment with respect to Claim IV of the Complaint (alleging that chapter 2.96 does not apply to its development in LPD 1), or, in the alternative, with respect to Claim I, (alleging that chapter 2.96 violates the Contracts Clause of the United States Constitution).  MLP now seeks a declaratory judgment stating that residential development within LPD 1 is not subject to an

6

affordable housing requirement under chapter 2.96, or that the
new law violates the Contracts Clause.

III.      SUMMARY JUDGMENT STANDARD.

          Summary judgment shall be granted when "the pleadings,
the discovery and disclosure materials on file, and any
affidavits show that there is no genuine issue as to any material
fact and that the movant is entitled to judgment as a matter of
law."  Fed. R. Civ. P. 56(c) (effective Dec. 1, 2007).

          One of the principal purposes of summary judgment is to
identify and dispose of factually unsupported claims and
defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).
Accordingly, only "admissible evidence may be considered in
deciding a motion for summary judgment."  Miller v. Glenn Miller
Prods., Inc., 454 F.3d 975, 988 (9th Cir. 2006).  On a summary
judgment motion, "the nonmoving party's evidence is to be
believed, and all justifiable inferences are to be drawn in that
party's favor."  Id. (internal quotations and brackets omitted).

          When the party moving for summary judgment would bear
the burden of proof at trial, it also bears "the initial burden
of demonstrating the absence of a genuine issue of material fact"
on each issue material to its case.  Glenn Miller Prods., Inc.,
454 F.3d at 987 (internal quotations omitted).  A material fact
is one that could affect the outcome of the suit under the
governing substantive law.  Id.

7

When the moving party fails to carry its initial burden, "the nonmoving party has no obligation to produce anything." Nissan Fire & Marine Ins. Co. v. Fritz Co., Inc., 210 F.3d 1099, 1102-03 (9th Cir. 2000). "In such a case, the nonmoving party may defeat the motion for summary judgment without producing anything." Id. at 1103.

If, however, the moving party meets its burden, the burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial. Glenn Miller Prods., Inc., 454 F.3d at 987. The nonmoving party may not rely on the mere allegations in the pleadings but instead "must set forth specific facts showing that there is a genuine issue for trial." Porter v. Cal. Dep't of Corr., 419 F.3d 885, 891 (9th Cir. 2005) (internal quotations omitted). However, summary judgment should not be granted "where contradictory inferences may be drawn from undisputed evidentiary facts." United States v. Perry, 431 F.2d 1020, 1022 (9th Cir. 1970). Only when the evidence "could not lead a rational trier of fact to find for the nonmoving party" may a court may properly grant summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotations omitted).

IV.        ANALYSIS.

    A.   MLP Has Not Established as a Matter of Law That LPD 1 and Its Central Resort Project are Exempt from the Requirements of Chapter 2.96.

MLP argues that "the plain language" of chapter 2.96 shows that MLP's central resort project is exempt from its affordable housing requirements.  Pl.'s Mem. Supp. Mot. Summ. J. 15.  MLP additionally argues that, when read and construed in light of the ordinances enacted in 1989, chapter 2.96 establishes that MLP is exempt.  MLP does not meet its burden of proving that its central resort project falls under any exemption.

    1.   MLP Has Not Established That Its Development Was Already Subject to An Affordable Housing Requirement and Is Therefore Exempt from the Requirements of Chapter 2.96.

A development is exempt when it is "subject to an affordable housing requirement, evidenced by an executed affordable housing agreement with the County, currently in effect and approved prior to the effective date of this chapter."  MCC § 2.96.030(B)(1).  MLP contends that it falls within this exemption because its Bilateral Agreement with the County is an "affordable housing agreement" that was in effect before chapter 2.96 was enacted.  Pl.'s Mem. Supp. Mot. Summ. J. 16.  The County counters that this exemption does not apply because the Bilateral Agreement is not an affordable housing agreement but merely "contemplates a future affordable housing agreement."  Def.'s Mem. Opp. Mot. Summ. J. 6-7.

9

The Bilateral Agreement, by its plain language, discusses affordable housing requirements only in connection with hotel development.  It states that, at the time the Maui County Council created LPD 1, the Maui County Code did "not provide for an affordable housing program applicable to hotel developments." Ex. 3 att. to Pl.'s Concise Statement.  The Bilateral Agreement recognizes that the County enacted "Chapter 2.94, which implemented an affordable housing construction program applicable to hotel developments," and that MLP was to "provide affordable housing with respect to Lahaina Project District 1 (Kapalua) in accordance with . . . [the] requirements set forth in Chapter 2.94." Id. at 4-5.  Finally, the Bilateral Agreement states that, "when a hotel development in Lahaina Project District 1 (Kapalua) that is subject to Chapter 2.94 is proposed, the affordable housing proposed with respect to such development shall be reflected in a recorded agreement." Id. at 5.  It is this language that causes the County to read the Bilateral Agreement as contemplating a future agreement, not as itself constituting an affordable housing agreement.

In arguing that the Bilateral Agreement covers all of MLP's development in LPD 1, not just hotel development, MLP points to a "whereas" clause in the Bilateral Agreement.  That clause states, "Whereas, Chapter 19.73.100(A)(2) requires MLP to enter into a bilateral agreement with the County, wherein MLP

agrees to develop and coordinate an affordable housing program for residents of West Maui." Ex. 3 at 1 att. to Pl.'s Concise Statement. This clause does not create a specific obligation for any party. It does not by itself indicate that MLP and the County intended to address MLP's affordable housing obligations in connection with all of its projects.

This language arguably refers to which persons may live in the affordable housing to be developed by MLP (i.e., any resident of West Maui, not just hotel employees), rather than stating that any MLP development in West Maui is covered by the Bilateral Agreement. At most, the Bilateral Agreement might be said to be ambiguous as to whether the parties intended it to be an affordable housing agreement covering all of MLP's developments within LPD 1. An ambiguity relating to the intent of the parties is not a matter susceptible to summary judgment. Found. Int'l Inc. v. E.T. Ige Const., 102 Haw. 487, 497, 78 P.3d 23, 33 (2003). An ambiguous term is one susceptible to more than one reasonable interpretation. San Diego Police Officers' Ass'n v. San Diego City Employees' Ret. Sys., 568 F.3d 725, 737 (9th Cir. 2009). "When an ambiguity exists so that there is some doubt as to the intent of the parties, intent is a question for the trier of fact." E.T. Ige Const., 102 Haw. at 497, 78 P.3d at 33. MLP does not meet its burden of establishing that there is no genuine issue of material fact on this issue.

MLP also argues that the Bilateral Agreement must be interpreted by analyzing the course of conduct between the parties.  But MLP presents no evidence demonstrating any course of conduct that shows that the parties intended this agreement to cover all development.

Even assuming that the Bilateral Agreement were not ambiguous, MLP does not establish that it contains an "affordable housing agreement" exempt from the requirements of chapter 2.96. The Hawaii Supreme Court has explained a court's role when construing a Hawaii statute:

> First, the fundamental starting point for statutory interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning. Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists. And fifth, in construing an ambiguous statute, the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning.

Carlisle v. One (1) Boat, 119 Haw. 245, 256, 195 P.3d 1177, 1188 (2008). (internal citations omitted).  Thus, this court must apply the same rules of construction when interpreting municipal

ordinances as it does when interpreting statutes.  See Save
Diamond Head Waters LLC v. Hans Hedeman Surf, Inc., 121 Haw. 16,
25, 211 P.3d 74, 83 (2009) (noting that the interpretation of a
charter is similar to the interpretation of a statute).  "The
construction or interpretation of a statute may be indulged in
only in case of ambiguity or uncertain meaning." Matter of
Grayco Land Escrow, Ltd., 57 Haw. 436, 455, 559 P.2d 264, 277
(1977) (internal quotations omitted).  When language is
ambiguous, "yet capable of being fairly and reasonably construed,
the purpose and objective which moved the legislature to enact it
may be determinative of its interpretation." State v. Silva, 61
Haw. 385, 389, 605 P.2d 496, 499 (1980) (internal quotations
omitted).

        The term "affordable housing agreement" is not defined.
No law delineating the scope of the term "affordable housing
agreement" has been identified for this court.  See Franks v.
City & County of Honolulu, 74 Haw. 328, 335, 843 P.2d 668, 672
(1993) (holding that the phrase "any party or any person served
with notice of a claim" is ambiguous because it fails to clearly
delineate who may file a motion).  It may be that the County
intended to exempt only projects subject to affordable housing
agreements expressly covering residential developments.  Or it
may be that the County intended to exempt any project already
subject to an agreement discussing affordable housing in any

context, including an agreement requiring a further agreement and referring to only nonresidential development.  MLP presents no means by which the court may resolve this issue.  While this court realizes that no one councilmember's comments can on their own establish the intent behind an ordinance, it is notable that MLP provides no legislative history beyond the chronology of enactments.

The court recognizes that chapter 2.96 was not enacted in a vacuum.  Other ordinances enacted before chapter 2.96 created LPD 1 and required a developer to enter into an agreement in connection with any hotel development, while allowing other development to proceed without such an agreement.  MCC § 19.73.100(A)(2).  But allowing other development to proceed without an agreement did not necessarily mean that future developments that did not involve hotels were exempt from future affordable housing requirements.

Finally, MLP argues that it is the County's burden to prove that the exemptions in chapter 2.96 are not applicable here.  Reply Mem. Supp. Mot. Summ. J. 2-3.  MLP cites a recent order in Kamaole Pointe Development LP v. County of Maui, No. 07-447, 2009 WL 3172733 (D. Haw. Sept. 29, 2009), for the proposition that the County, a defendant in that case, bears the burden of establishing that a law is inapplicable.  Reply Mem. Supp. Mot. Summ. J. 2-3.  MLP misapprehends Judge David Ezra's

14

ruling.  In that case, the County of Maui moved for summary

judgment and "asked this Court to give effect to the County's

interpretation of the Charter."  Kamaole Pointe Dev. LP, 2009 WL

3172733 at *7.  The court denied the County's motion for summary

judgment because the County did "not cite to any affidavits,

policy statements, or other facts" to support its "conclusory

allegation" that the Charter was intended to be interpreted in

the way the County proposed.  Id.  Here, MLP is the movant asking

this court to give effect to its interpretation of an exemption

provision in an ordinance.  MLP has the burden of persuasion as a

movant, and will have the burden of proof as a plaintiff at

trial.  MLP does not meet its burden of establishing that it was

already subject to an affordable housing requirement that renders

chapter 2.96 inapplicable to the central resort project.

> 2. MLP Has Not Established That It Was Subject to a
>    Change in Zoning That Makes it Exempt From the
>    Requirements of Chapter 2.96.

MLP also argues that it fits within the second

exemption from the requirements of chapter 2.96.  The exemption

makes chapter 2.96 inapplicable to any development subject to a

"change in zoning condition that requires affordable or

residential workforce housing, unless the condition expressly

allows for the application of the affordable housing or

residential workforce housing policy set forth herein."  MCC

§ 2.96.030(B)(2).  MLP argues that this second exemption applies

because the central resort project flows from ordinances enacted in 1989 that created LPD 1 by changing zoning conditions.  Pl.'s Mem. Supp. Mot. Summ. J. 17.  MLP further contends that the Bilateral Agreement creates the affordable housing requirement mentioned in the second exemption.  The County responds that, because the 1989 ordinances did not "require" any affordable housing, the ordinances were not a "change in zoning condition that requires affordable or residential workforce housing." Def.'s Mem. Opp. Mot. Summ. J. 6.

No 1989 ordinance expressly required any affordable or residential workforce housing.  Instead, the laws at issue required an applicant to enter into an agreement with the County to develop and coordinate an affordable housing program.  MCC § 19.73.100(A)(2).  Even if this distinction is immaterial, MLP must still establish that it had a development subject to a "change in zoning condition."  MLP fails to do this, providing no evidence as to when it started actual planning of the central resort project.

MLP contends that the central resort project is part and parcel of its development package for LPD 1.  MLP points to the minutes of a Maui Planning Commission meeting in which Bob McNatt of MLP is quoted as saying, "The entire central resort is supposed to [be] designed around a central village core and that's what we've been working on essentially for the last 40

16

years when this first was envisioned by . . . the founder of
Kapalua." Ex. 3. at 90 att. to Def.'s Concise Statement.
Putting aside any evidentiary problem with the form of this
evidence, a statement by an MLP executive that for 40 years MLP
has envisioned and worked on achieving its goal does not
establish that the central resort project is a development that
was actually planned, approved, or in existence before the 1989
ordinances were enacted. McNatt's statement is extremely vague.
He says "that's" what MLP has "been working on essentially for
the last 40 years," but it is unclear what "that" is or what
"work" was done by 1989. Possibly, MLP had only the concept for
the central resort project in mind by 1989.

Indeed, it is unclear from the record that MLP had any
"development" before 1989 that became subject to a "change in
zoning" created by the 1989 ordinances, much less that the
central resort project was such a development. Having made no
showing that it had any "development" before the 1989 ordinances
were enacted that is relevant here, MLP does not establish that
the 1989 ordinances constituted a "change in zoning condition" to
which MLP's central resort project was subject.

The court concludes that MLP has failed to establish
that it falls within the exemptions to chapter 2.96.

17

B.   MLP Has Failed to Prove that Chapter 2.96 Violates the
     Contracts Clause of the United States Constitution.

The Contracts Clause of the United States Constitution
states, "No State shall . . . pass any . . . Law impairing the
Obligation of Contracts." U.S. Const. art. I § 10, cl. 1.
Whether a regulation violates the Contracts Clause is governed by
a three-step inquiry. First, the court asks "whether the state
law has, in fact, operated as a substantial impairment of a
contractual relationship." RUI One Corp. v. City of Berkeley,
371 F.3d 1137, 1147 (9th Cir. 2004) (internal quotations
omitted). Second, the court must decide whether the state has a
"significant and legitimate public purpose behind the regulation,
such as the remedying of a broad and general social or economic
problem, to guarantee that the State is exercising its police
power, rather than providing a benefit to special interests."
Id. (internal quotations omitted). Third, the court must inquire
"whether the adjustment of the rights and responsibilities of
contracting parties is based upon reasonable conditions and is of
a character appropriate to the public purpose justifying the
legislation's adoption." Id. The Contracts Clause applies to a
municipality such as the County of Maui. See id. (analyzing
whether a municipal ordinance violated the Contracts Clause).

The threshold inquiry of whether the state law has
operated as a substantial impairment of a contractual
relationship has three components: "whether there is a

18

contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial." Id. (internal quotations omitted).  The first sub-inquiry is not whether any contractual relationship exists between the parties, but whether there was a "contractual agreement regarding the specific . . . terms allegedly at issue." Gen. Motors Corp. v. Romein, 503 U.S. 182, 187 (1992).  Federal law controls as to whether state statutes or ordinances create contractual rights protected by the Contracts Clause.  San Diego Police Officers' Ass'n, 568 F.3d at 736.

    The contract allegedly impaired by chapter 2.96 is the 2004 Bilateral Agreement.  It is undisputed that the Bilateral Agreement was formed before chapter 2.96 was enacted in 2006.  It is also undisputed that the Bilateral Agreement contains no express requirement that MLP must provide affordable housing in connection with a residential development.  The court therefore concludes that MLP does not establish that any specific provision of the Bilateral Agreement is being impaired by chapter 2.96.

    MLP may be arguing that chapter 2.96 impairs an implied term in the Bilateral Agreement.  MLP states that the "Bilateral Agreement's *silence* as to the provision of affordable housing in connection with Plaintiff's *residential* development . . . evidences the agreement of the parties that Plaintiff would *not*

19

be required to provide affordable housing in connection with the same." Pl.'s Mem. Supp. Mot. Summ. J. 25.

For a court to hold that a contract contains an implied term, the term must be "central to the bargained-for exchange between the parties, or to the enforceability of the contract as a whole." Romein, 503 U.S. at 182. The Ninth Circuit has stated that "the contracting parties must manifest assent" to an implied term. RUI One Corp., 371 F.3d at 1148 (internal quotations and brackets omitted). Here, there is neither undisputed evidence that the parties agreed to limit MLP's affordable housing obligations to hotel development, nor undisputed evidence that this purported implied provision was central to a "bargained-for exchange" resulting in the Bilateral Agreement.

Even if the parties contemplated both residential and hotel development in LPD 1, there is no evidence that the parties contemplated limiting MLP's affordable housing requirements to hotel development. The lack of reference to residential development, if the County knew that MLP was planning residential development, could be said to support the County's position that the Bilateral Agreement was not intended to cover residential development. In any event, MLP does not establish entitlement to summary judgment on this issue.

MLP may also be arguing that the course of dealing between the parties created an expectation that the Bilateral

20

Agreement would cover all development.  See Univ. of Haw. Prof'l
Assembly v. Cayetano, 183 F.3d 1096, 1102-03 (9th Cir. 1999)
(noting that a course of dealing between the parties can create a
contractual expectation).  Even if the court should consider the
parties' course of dealing, the court has no evidence of the
parties' conduct that supports such an interpretation of the
Bilateral Agreement.

     If the parties wanted the Bilateral Agreement to cover
residential development and were aware that MLP was planning
residential development, they could have mentioned that in the
Bilateral Agreement.  On this motion, the court is given no
reason to read in terms.  See State Farm Fire & Cas. Co. v.
Pacific Rent-All, Inc., 90 Haw. 315, 324, 978 P.2d 753 (1999)
("It is well settled that courts should not draw inferences from
a contract regarding the parties' intent when the contract is
definite and unambiguous.").

     Even if the Bilateral Agreement could be read in the
manner MLP proposes, the parties' intent in entering into the
Bilateral Agreement is a question of fact not amenable to
determination on a motion for summary judgment.  See E.T. Ige
Const., 102 Haw. at 497, 78 P.3d at 33; see also Seiden Assocs.
v. ANC Holdings, Inc., 959 F.2d 425, 428 (2d Cir. 1992) ("Where
the language used is susceptible to differing interpretations,
each of which may be said to be as reasonable as another, and

21

where there is relevant extrinsic evidence of the parties' actual intent, the meaning of the words become an issue of fact and summary judgment is inappropriate.").

As MLP fails to satisfy the first inquiry for establishing a Contracts Clause violation, the court need not address the other elements.

C.   <u>This Ruling Does Not Turn On Inadmissible Evidence.</u>

The County contends that MLP's motion should also be denied on the ground that MLP relies on inadmissible evidence. Because the court is denying MLP's motion for summary judgment, the authenticity or admissibility of MLP's evidence is moot.   In any event, the County appears only to be challenging the sufficiency of the authentication, not whether the exhibits are actually authentic, manufactured, or altered.   Some of MLP's exhibits are County ordinances, which are self-authenticating under Rule 902(5) of the Federal Rules of Evidence.   Some exhibits appear to be sufficiently authenticated based on personal knowledge.   In this court's usual prehearing inclination, the court directed the County to come to the hearing prepared to discuss any evidentiary issues it had.   The County did not raise the subject at the hearing, and the court sees no reason to address it further here.

V.        CONCLUSION.

          MLP's motion for summary judgment is denied.  MLP has
failed to satisfy its burden of establishing as a matter of law
that its development is exempt from the requirements of chapter
2.96.  MLP has also failed to establish that the ordinance is a
violation of the Contracts Clause.  The court stresses that it is
only denying MLP's motion, not determining that MLP's central
resort project is subject to chapter 2.96.  That issue remains
for further proceedings.

          IT IS SO ORDERED.

          DATED: Honolulu, Hawaii, October 27, 2009.



                              /s/ Susan Oki Mollway
                              Susan Oki Mollway
                              Chief United States District Judge

Maui Land & Pineapple Co., Inc.,  v. County of Maui, Lori Tsuhako, et. al,
Civil No. 08-465 SOM/LEK; ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT.